[Civ. No. 740.   Second Appellate District.—December 31, 1909.]

## MARY A. HANNON and KATHERINE HANNON et al., Minors, by CATHERINE HANNON, Guardian of Their Persons and Estates, Respondents, v. SOUTHERN PACIFIC RAILROAD COMPANY, a Corporation, and the SOUTHERN PACIFIC COMPANY, a Corporation, Appellants.

HOMESTEAD DECLARED BY WIFE ON HUSBAND'S PROPERTY—DESCENT TO WIFE BY TERMS OF STATUTE IN FORCE—WIFE'S DEED—EJECTMENT BY HEIRS OF DECEASED HUSBAND.—In an action of ejectment by children of a deceased husband, as his heirs, where defendants claim under a deed from the wife, who declared a homestead on the husband's separate property in 1874, when the law cast the descent upon the wife, as survivor of the husband, such descent is controlled by the law of descent as it stood at the time of the husband's death in 1885, when the wife took only one-third of the property, and the children plaintiffs the other two-thirds, and they were entitled to recover the possession of two-thirds thereof as against the defendants appealing.

ID.—RULE OF STATUTORY CONSTRUCTION—WORDS NOT USED IN VAIN.—It is a rule of statutory construction that the legislature is not supposed to have used words in vain, and that, if possible, some effect must be given to all the words used.

ID.—CONSTRUCTION OF CODE PROVISION—DESCENT.—The fact that, in section 1265 of the Civil Code, as that section stood when the homestead was declared, the words "it descends to and vests in the survivor" were used, indicates that some meaning was intended to be expressed by them, and if the purpose can be ascertained and its meaning discerned, effect must be given to the statute accordingly.

ID.—NATURE OF JOINT TENANCY AT COMMON LAW—NO RIGHT OF DESCENT GIVEN TO SURVIVOR—EFFECT OF ORIGINAL TITLE.—Upon the death of one joint tenant at common law, no descent was cast upon the survivor. In contemplation of law, each tenant was seised of the whole estate, and the whole estate simply remained in the survivor as the result of the original grant in joint tenancy.

ID.—USE OF WORDS "JOINT TENANCY" IN CODE SECTION—DEVOLUTION BY DESCENT.—The use of the words "joint tenancy" in the original section 1265 of the Civil Code, providing that "if the declaration was made by a married person; the land is thereafter held by the spouses in joint tenancy, and on the death of either of the spouses . . . it descends to and vests in the survivor," was evidently intended

merely to describe the nature of the estate during the life of the spouses, leaving the devolution upon the death of either to be fixed by the succeeding clause providing for descent.

ID.—CONSISTENCY OF CODE PROVISIONS—PURPOSE OF HOMESTEAD.—This construction of section 1265 harmonizes the provisions, and also any seeming inconsistency between the provisions and section 1474 of the Code of Civil Procedure, as to temporary disposition of the homestead, and is in harmony with the general idea upon which the homestead right is founded, the primary purpose of which is to preserve a home for the protection of the family, and not to define the character of estates or the general qualities of ownership.

ID.—STATUTES OF DESCENT SUBJECT TO LEGISLATIVE CONTROL AND CHANGE.—Statutes of descent are always subject to the legislative control, and may be abolished at will, because the mere right of descent is not a vested right, but a mere expectancy, until the descent is actually cast by death of the owner.

ID.—HOMESTEAD RIGHT—LEGISLATION REQUIRED—CHANGE OF LAW PERMISSIBLE.—The right of homestead, though secured by the constitution, requires legislation to make it effectual. It is a creature of the statute, and subject to change at any time. The constitution vests power over the subject in the legislature.

ID.—IMMATERIALITY OF TIME OF SELECTION OF HOMESTEAD—STATUTE AT DEATH OF OWNER CONTROLLING.—It is immaterial when the homestead was selected, or what law existed at that time, as the statute in force at the death of the spouse whose property was impressed with the homestead character controls the descent and devolution of the title.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, for Appellants.

Works & Lee, John D. Works, and Bradner W. Lee, for Respondents.

THE COURT.—The question of law involved on this appeal was submitted to the trial court upon stipulation, and Justice Lucien Shaw, now of the supreme court, then on the superior bench, in deciding the case, wrote an opinion which is quoted in the brief of respondents. It is as follows:

"This is an action to recover the possession of the undivided two-thirds of a tract of real estate. The land in ques-

tion was the separate property of Patrick Hannon, the father of the plaintiffs, at the time of his marriage to Catherine Hannon, the mother of plaintiffs, on June 8, 1874. On June 19, 1874, Catherine Hannon made and recorded a declaration of homestead upon the land in accordance with the provisions of the Civil Code, as then existing, the family then residing thereon. Patrick Hannon died on October 29, 1885, leaving surviving the plaintiffs and Catherine Hannon, his wife. The defendants claim right to the possession of the land under Catherine Hannon, and the plaintiffs claim as the children and heirs at law of said Patrick Hannon. The decision of the case depends upon the decision of the question whether the law governing succession to the homestead is the law in force at the time the homestead declaration was filed, or the law in force at the time of the death of Patrick Hannon. And this question again depends on the effect of the law relating to homesteads in force at the time of the filing of the declaration of homestead. This law consisted of section 1265 of the Civil Code and section 1474 of the Code of Civil Procedure as enacted in 1872. These two sections were amended in 1874, so as to leave them in their present form, substantially, but the amendments did not take effect until July 1, 1874, twelve days after the homestead was filed. The original section, 1265, was as follows:

" 'From and after the declaration is filed for record the land therein described is a homestead; and if the declaration was made by a married person, the land is thereafter by the spouses held in joint tenancy and on the death of either of the spouses, . . . it descends to and the title at once vests in the survivor.'

"And section 1474, Code of Civil Procedure, was as follows: 'The homestead selected by the husband and wife, or either of them, during their coverture, and recorded while both are living, on the death of the husband or wife vests absolutely in the survivor.'

"By the law in force at the time of the death of Patrick Hannon, the land, being his separate property, would go to his heirs, and not entirely to the surviving wife.

"If, therefore, the provisions of the codes as they existed in June, 1874, had the effect of giving to Catherine Hannon, at once upon the filing of the homestead declaration, a vested

interest in the land constituting the homestead, as a joint tenant with her husband, of such character that it became at that instant a vested right, beyond subsequent legislative control, then, of course, the subsequent amendment of the codes did not affect the right, and upon the death of Patrick in 1885, she, as survivor, became at once vested with the whole estate, or to use the technical language of common law, the other joint tenant having ceased to exist, she was thenceforth the only person entitled to any part of the estate in the land, and the defendants as her successors are now entitled to possession. And this is the question in the case.

"The supreme court of this state has decided the question both ways. In *Estate of Headen,* 52 Cal. 295, it was held that these provisions of the code, prior to the amendment of July 1, 1874, were not statutes of descent, but that, on the contrary, their effect was such that a joint estate in the homestead became vested in the husband and wife, which was not affected by the subsequent amendment. In *Gruwell* v. *Seybolt,* 82 Cal. 7, [22 Pac. 938], the exact contrary was decided, and it was said that 'the law in force at the time of the death, and not that which was in force at the time of the declaration, controls on the subject of homestead and the rights of survivors.'

"The latter case, being the latest decision, would ordinarily be considered as the proper rule of decision for the superior courts, but in disparagement of this decision it is correctly said that it does not refer at all to the former decision in *Estate of Headen,* and that the point was not necessary to the decision of the case. It was involved in the case, however, and it cannot in strictness be called an *obiter dictum.*

"But this condition of the decision makes it proper to consider more carefully the previous decisions and the state of the law, and also the reasoning on which the conflicting theories are founded.

"Prior to 1860 the statute did not attempt to state the effect of a homestead upon the title of the land. No declaration was required. The homestead was constituted by residence and selection merely. It was provided that no alienation could be made, or lien placed thereon, without the signature of the wife, and that on the death of the 'head of the family' the homestead should 'be set apart by the probate court for

the benefit of the surviving wife and his own legitimate children,' or, failing them, to his heirs. (Stats. 1851, p. 296.) Under this law the supreme court in a rather loose manner in several decisions described the interest of the husband and wife in the homestead as a 'sort of joint tenancy.' (*Taylor* v. *Hargous*, 4 Cal. 273, [60 Am. Dec. 606]; *Cook* v. *McChristian*, 4 Cal. 23; *Poole* v. *Gerrard*, 6 Cal. 71, [65 Am. Dec. 481]; *Revalk* v. *Kraemer*, 8 Cal. 66, [68 Am. Dec. 304].) In *Gee* v. *Moore*, 14 Cal. 472, decided in 1859, Field, C. J., criticises these decisions, says they have not met the approval of the profession, and that 'There is nothing in the nature of the homestead right or privilege which justified its designation as such an estate,' and that 'it is not warranted by any language of the constitution or the statute.' At the next session of the legislature this statute was amended apparently with reference to this decision, for it is provided by the amendment that 'from and after the filing for record of said declaration, the husband and wife shall be deemed to hold said homestead as joint tenants,' and that 'upon the death of either husband or wife the homestead should be set apart by the probate court for the benefit of the surviving husband or wife, and his or her legitimate children.' (Stats. 1860, p. 311.) Under this statute it was held that although section 1 standing alone might create a joint tenancy in the homestead between the husband and wife, with the right of survivorship, yet as modified by section 4 of the same amendment, the children took an interest as successors, and therefore it was a statute of descent and did not create any joint tenancy. (*Rich* v. *Tubbs*, 41 Cal. 36; *Levins* v. *Rovegno*, 71 Cal. 282, [12 Pac. 161].)

"In 1862 section 4 of the original homestead act was again amended so as to read as follows: 'The homestead property selected by the husband and wife, or either of them, . . . shall upon the death of the husband or wife, vest absolutely in the survivor and be held by the survivor as fully and amply as the same was held by them, or either of them, immediately preceding the death of the deceased.'

"The effect of the statute after this amendment was under consideration by the supreme court in *Barber* v. *Babel*, 36 Cal. 11, with reference to the power of the husband alone during the lifetime of both to affect the homestead property

by his contracts or conveyances. The opinion does not hold that the statute creates a joint tenancy in the homestead, but it declares that it is not perceived why the right established does 'not approach substantially very near a joint tenancy, although not created in precisely the same way, even if not a technical joint tenancy at common law,' and that 'there is a joint interest in the homestead—a joint holding if not a technical joint tenancy.' And it was held that the interest of each in the homestead could only be divested by the concurrent act of both.

"With the law in this condition the codes were adopted embracing the provisions first above quoted. The first case construing the code provisions upon the point here under consideration was *Estate of Headen,* 52 Cal. 295. Although that case gives a much more extended discussion of the point than the later case of *Gruwell* v. *Seybolt,* yet I find myself unable to agree with the conclusion reached, or with the reasoning on which it is founded.

"Speaking with reference to the clause in section 1265 of the original Civil Code, that 'the land is thereafter held by the spouses in joint tenancy,' the court in that case says: 'One of the necessary incidents of a joint tenancy is the right of survivorship—the *jus accrescendi*—and the provision that, upon the death of one of the spouses, "the title at once vests in the survivor" adds nothing to the legal quality of the estate held by the spouses, but simply declares the result which must necessarily ensue upon the death of one of the joint tenants.'

"There is a rule of statutory construction which is here ignored, namely, that the legislature is not to be supposed to have used words in vain, and that, if possible, some effect must be given to all the words. The fact that the words 'it descends to and at once vests in the survivor' were used, indicates that some meaning was intended to be expressed by them, and that some purpose was intended to be effected thereby, and if the purpose can be ascertained and the meaning discerned, effect must be given to the statute accordingly. The writer of the paragraph quoted misconceived the precise nature of a joint tenancy at common law. By the well-established rules of the common law upon the death of one joint tenant the title did not 'vest in the survivor.' The

notion of the nature of a joint tenancy entertained by the ancient law writers and jurists was a very peculiar one. The title did not vest or descend upon the death of one tenant. In contemplation of the law each tenant was seised of the whole estate from the first and no change occurred in his title on the death of his cotenant. It simply 'remained' to him. He did not derive the title or estate or any part or interest therein from his cotenant, but wholly from the original grant. Thus in Coke on Littleton, section 286, it is said: 'He which surviveth claimeth and hath the land by the survivor, and hath not, nor can claime anything by descent from his companion.' So far, Lord Littleton. And upon this Lord Coke says: 'Here again Littleton sheweth the reason; and the cause wherefore the survivour shall not hold the land charged, is, for that he claymeth the land from the first feoffor, and not by his companion, which is Littleton's meaning when he saith (that he claimeth by survivor) for the surviving feoffee may plead a feoffement to himselfe without any mention of his joynt feoffe.'

"And Blackstone, speaking concerning the effect of the death of one joint tenant, says: 'As therefore the survivor's original interest in the whole still remains, and as no person can now be admitted, either jointly or severally, to any share with him therein, it follows that his own interest must now be entire and several and that he shall alone be entitled to the whole estate (whatever it be) that was created by the original grant.'

"And in Washburn on Real Property, volume 1, page 646, paragraph 14, it is said: 'The interest which a joint tenant has as survivor is not a new one acquired by him from his cotenant upon the latter's death; for his own interest is not changed in amount, but only his cotenant's is extinguished.'

"It is therefore a mistake to say of joint tenants that the title vests in the survivor upon the death of the cotenant; or that it descends to him from his cotenant, for it had already vested in him by, and at the time of, the original grant. And if the legislature by these words meant to give the effect which the words import, that upon the death of one spouse there should really be a vesting of the title at that instant in the other, and a descent from one to the other, then this must be held to be a different effect from that which was intended

by the provision that during their lives the land was to be held in joint tenancy; for if it were so held the title would not vest in the survivor at the death of the other, but previously at the time when the declaration of homestead was filed for record. And these words do change the quality of the estate held by the spouses, and they do not 'simply declare the result which must necessarily ensue upon the death of one of the joint tenants.' For the title of the surviving joint tenant exists from the beginning, and does not vest upon the death of his cotenant, and if in this case it does, then the title is something different from a joint tenancy.

"And with reference to the words 'descends to,' used in section 1265 heretofore quoted, the opinion in *Estate of Headen* says: 'We are of the opinion that both phrases "descend to" and "vest in" merely express the operation of the rule of survivorship which is necessarily incident to a joint tenancy, and that they do not furnish any other or different mode for the transmission of the estate.'

"This is directly contrary to all the common-law authorities, both as to the time when the estate vests in the survivor, and as to the source from which he derives title to the whole estate. It is also contrary to the rule of construction prescribed by the code itself. The word 'descend' has always had a well-known, certain, technical, legal meaning.

"'Descent or hereditary succession is the title whereby a man, on the death of his ancestor, acquires his [the ancestor's] estate by right of representation as his heir at law.' (2 Blackstone's Commentaries, 201; *Estate of Donahue,* 36 Cal. 332.) It is true, as stated in *Estate of Headen,* that the code does not use the word 'descent' to express this idea, but substitutes the word 'succession.' But this does not change the meaning of the word 'descent' nor deprive it of the meaning it has always possessed. It is a technical word having a peculiar and appropriate meaning in law, and by the rule laid down in section 13 of the same code, it is to be construed accordingly. We therefore have this condition: that the part of the section declaring that the spouses, during their lives, hold in joint tenancy, is inconsistent with that which provides that upon the death of one the homestead shall descend to the other, if both phrases are given their technical meaning. It is necessary either to reconcile this inconsistency, or, if that

cannot be done, to determine which of the two inconsistent provisions shall prevail, in construing and giving effect to the section. From a consideration of other statutes on the same subject it is evident that the provision that the spouses are to hold as joint tenants must be taken with important qualifications. By section 683 of the same code a joint estate must be created by a single will or transfer. And this was also necessary at common law. By section 752 of the Code of Civil Procedure joint tenants may have a partition of the joint estate and a sale thereof, if necessary to effect the partition. A homestead is not created either by will or transfer, and there can be no partition of a homestead by either party.

"To this extent, therefore, the estate of husband and wife in a homestead is different from a joint tenancy, and the declaration that they hold as joint tenants cannot be given full effect.

"There was at common law a species of joint tenancy which could only exist between husband and wife, which was denominated a tenancy by entireties, and which could not be alienated by either party alone, nor partitioned, and which therefore bore a closer resemblance to the right of homestead under this statute; but that species of joint tenancy must be considered as abolished by the provisions of sections 682 and 683 of the Civil Code, which exclude it from the enumeration of the different kinds of ownership.

"Under these circumstances the reasonable construction of section 1265 of the Civil Code, as originally enacted, requires that the clause declaring that on the death of either spouse the land 'descends' to the survivor shall be construed as intended to still further qualify the character of the joint tenancy, or rather to show wherein the estate differed from a technical joint tenancy by, in effect, declaring that the survivor did not take by virtue of the original grant or declaration, as would be the case if it were a joint tenancy, but by descent. The term 'joint tenancy' was evidently used merely to describe as near as possible the nature of the estate during the lifetime of both spouses, leaving its devolution upon the death of either to be fixed by the succeeding clause providing for its descent. This harmonizes the seeming inconsistency of the two parts of the section, and between the section and section 1474 of the Code of Civil Procedure. And it is also

in harmony with the general idea upon which the homestead right is founded. The primary purpose of the homestead right is to preserve a home for the protection of the family. (Waples on Homesteads, p. 3; Smyth on Homesteads, secs. 1-14.) It was chiefly to provide an abiding place for the family so long as the family, as such, continues, that the statute was enacted, and not for the purpose of defining the character of estates or the general qualities of ownership The statute should therefore be construed to mean that on the death of one spouse the land descends to the other, and in that respect it is a statute of descent. Such laws are always subject to legislative control, and may be changed or abolished at will, because the right of descent, being a mere expectancy, is not a vested right. (Civ. Code, sec. 700.)

"In addition to all this there is the general proposition that the right of homestead, though secured by the constitution, requires legislation to make it effectual; that it is a creature of the statute and subject to change at any time; that it is not the primary purpose of such statutes to create vested rights in the land affected, and that the homestead right is not such a vested right that it cannot be taken away by legislation. While it is the duty of the legislature to provide for the protection of the family by protecting the home from forced sale, yet the mode of protection and the character and quality of the right of the respective members of the family, and their interests in the land of which the homestead is composed, may be changed from time to time during the occupancy by the family of the homestead, or during the continuance of the general homestead right, as the legislature may see fit. The constitution vests power over the subject in the legislature. (Art. XVII, sec. 1.) These principles are recognized in the following cases: *Estate of Delaney,* 37 Cal. 176; *Rich* v. *Tubbs,* 41 Cal. 34; *Herrold* v. *Reen,* 58 Cal. 446; *Tyrrel* v. *Baldwin,* 78 Cal. 473, [21 Pac. 116]; *Gruwell* v. *Seybolt,* 82 Cal. 7, [22 Pac. 938]. I think, therefore, that it is clear from all these considerations that the purpose of inserting the declaration that the land should descend to the survivor was to make it sure that the power to change still remained in the legislature and that the so-called joint estate was not to be considered a vested estate, nor a technical joint tenancy.

"This being the case, it follows that the statute governing the rights of plaintiffs here is the statute in force in 1885 at the time of the death of Patrick Hannon. This law gave the children, as his heirs, two-thirds of the estate."

Later cases decided by the supreme court since the foregoing opinion was rendered approve the rule that it is immaterial when the homestead was selected, as the statute in force at the time of the death of the spouse whose property was impressed with homestead character controls the descent and devolution of the title. (*Estate of Fath,* 132 Cal. 612, [64 Pac. 995]; *Saddlemire* v. *Stockton Savings Soc.,* 144 Cal. 650, 653, [79 Pac. 381].)

Accepting the foregoing opinion of Judge Shaw as the opinion of this court, for the reasons therein stated, the judgment appealed from is affirmed.