**In the
Matter of the Estate
of
HENRY BROMLEY NELTHROPP, Deceased**

Probate No. 1—1951
District Court of the Virgin Islands
Div. of St. Croix at Charlotte Amalie,
St. Thomas

March 18, 1955

*See, also, 129 F. Supp. 609*

ALPHONSO CHRISTIAN, Esq., St. Thomas, Virgin Islands, *for petitioner·*

WARREN H. YOUNG, Esq., St. Croix, Virgin Islands, *for defendant*

MOORE, *Judge*

This matter came on for hearing with petitioners represented by Alphonso Christian, Esquire, and the defendant estate represented by Warren H. Young, Esquire.

Petitioners, Alphonso Nelthropp and Theresa Nelthropp Furrop, are before this court on a petition to have the will of Henry Bromley Nelthropp, deceased, declared null and void in so far as it fails to name or make provision for the said petitioners, who claim to be two illegitimate children of deceased. Petitioners ask that the net distributable assets of the estate of the deceased be distributed, insofar as petitioners are concerned, as if the deceased had died intestate.

Henry Bromley Nelthropp died in December, 1950, leaving an estate valued at about $30,000 (two pieces of real estate valued at $26,200 and personalty in the amount of $4,426). Deceased left a widow, Beatrice Aurora Kuntz Nelthropp, four legitimate children born of a former marriage, namely, Louis Otto Bromley Nelthropp, Carmen Alice Nelthropp, Earle Bromley Nelthropp and Astrid Nelthropp Lawder and two children born out of wedlock, namely, Alphonso Nelthropp and Theresa Nelthropp Furrop, petitioners herein. Deceased died leaving a joint will executed by him and his wife on September 13, 1949, by the provisions of which the entire estate of both was given absolutely to the survivor of both, with the further provision that, if any of said joint property should be left by the survivor, three-fourths thereof to be distributed as the absolute property of Louis Otto Bromley Nelthropp and Carmen Alice Nelthropp, share and share alike, and the remaining one-fourth to be divided between Earle Bromley Nelthropp and Astrid Nelthropp Lawlor, as their absolute property, share and share alike. The will did not name or make any provisions for the two illegitimate children, above named and petitioning herein.

Under the Code of Laws for the Municipality of St. Croix, the Chapter entitled "Of the Disposition of Property by Will" Title II, ch. 10, sec. 7, (note prec. 15 V.I.C. § 1), provides that:

"If any person make his last will and die, leaving a child or children, or descendants of such child or children, in case of their death, not named or provided for in such will, although born after the making of such will or the death of the testator, every such testator, so far as shall regard such child or children, or their descendants not provided for, shall be deemed to die intestate and such child or children, or their descendants, shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them; and all the other heirs, devisees, and legatees shall refund their proportional part."

Subsequent to the enactment of the above provision and prior to the death of the testator herein, the Legislative Assembly of the Virgin Islands passed an "Act Regarding the Property Status of Illegitimate Children" which became effective on May 18, 1949 (15 V.I.C. § 84(13)). This Act reads as follows:

"Section 1. An illegitimate child shall upon the approval of this measure and thereafter be considered to have the same status, for the purpose of the descent of the property of his or her ancestors, as if he or she were born in lawful wedlock, provided that in cases where the ancestor in question is a father, he admitted of record paternity of such child by signing the official birth certificate; or he was or is adjudged the father of such child by a court of competent jurisdiction; and provided further that such father shall have all the rights and privileges provided by law to fathers of legitimate children.

"Section 2. All Laws and Ordinances or parts thereof in conflict with this Law are hereby repealed."

The question before the Court is what effect or bearing, if any, does the Act of 1949 have upon the code provisions respecting the omission of a child or children from testator's will.

144

Petitioners claim that as a result of the statute of 1949 illegitimate children have the right to inherit both testate and intestate property unless they are specifically by name "willed out" of an inheritance. Petitioners contend that the statute of 1949 is a remedial statute which intended to give to illegitimate children all the rights of legitimate children with respect to inheritance, and that, therefore, section 7 of chapter 10 of the code relating to wills now applies to illegitimate as well as legitimate children.

The defendant estate, on the other hand, contends that the statute of 1949 by its terms applies only to inheritance by intestate succession; that it is only where the deceased dies intestate that the illegitimate children share in the estate the same as legitimate children. Defendant's argument is based on the use of the word "descent" in the statute, to wit: "for the purpose of the *descent* of the property of his or her ancestors . . ." Defendant asserts that this language has a clear and definite legal meaning, to wit: inheritance by intestate succession, and is to be distinguished from the obtaining of property by will. The following definitions of the term "descent" are cited by defendant:

Black's Law Dictionary: "Descent. Hereditary succession. * * * The division among those legally entitled thereto of the real property of intestates."

Blackstone's definition: "The title by which one person, upon death of another, acquires the real estate of the latter as his heir-at-law."

12 Words and Phrases, Descent, p. 356: " 'Descent' or 'hereditary succession' is the title whereby a man, on the death of his ancestor, acquires his ancestor's estate by right of representation as his heir at law." Hannon v. Southern Pac. R. Co., 12 Cal. App. 350, 107 Pac. 335, 338.

1 Bouvier's Law Dict., Rawle's Third Revision, p. 852: "Descent and distribution. . . . The division among

those legally entitled thereto of the real and personal property of intestate, the term *descent* being applied to the former and *distribution* to the latter. *Descent* is the devolution of real property to the heirs of one who dies intestate; the transmission by succession or inheritance."

Defendant also argues that the Legislative Assembly, as evidenced by the minutes of their discussion on the bill, had in mind only intestate estates, and that therefore, the language of the statute truly reflects their thinking and intention. Defendant points out that the proponent of the bill in the legislature, who was the principal speaker on the bill, time and again referred to the situation where a deceased died without having made a will and leaving illegitimate children whom he had recognized as his or who were adjudged to be his during his lifetime. Defendant further points out that at no time did the legislature refer to, or even appear to be cognizant of, the code provision regarding *omission* by a testator from his will of the name of one or more of his children; the only reference to a will being with respect to the right of a testator to "will out" or specifically disinherit a child.

Petitioners argue that the statute, being remedial in nature, must be liberally construed; that it is a statute intended to correct an injustice to illegitimate children and, therefore, should be given such meaning as will do "a complete job" of correcting the evil intended to be remedied. Petitioners contend that the term "descent" in the statute must be given its "generic, common meaning", which meaning petitioners claim is "hereditary succession generally", testate as well as intestate. The following authorities are cited by petitioners in support of such a meaning:

Black's Law Dictionary, Third Edition: "Descent: Hereditary succession. Succession to the ownership of an estate by inheritance, or by an act of law, as distinguished from 'purchase.' Title by descent is the title by which one

person, upon the death of another acquires the real estate of the latter as his heir at law . . . ."

Moffett v. Conley, 63 Okl. 3, 163 Pac. 118, 120: ". . . 'Methods of acquiring, and of losing, a title to estates in things real, are adduced by our law to two,' it is said in Blackstone's Commentaries, § 201: '(1) Descent, where the title is vested in a man by the single operation of the law; and (2) purchase, where the title is vested in him by his own act or agreement.'

"Of titles by descent, the author in the same section says: 'Descent or hereditary succession is the title whereby a man on the death of his ancestor acquires his estate by right of representation, as his heir at law. An heir, therefore, is he upon whom the law casts the estate immediately upon the death of the ancestor; and an estate, so descending to the heir, is in law called the inheritance.' "

Petitioners further contend that the statute must be given such meaning as the legislature intended it to have. Petitioners maintain that the legislative proceedings establish that the legislature intended to equalize the rights of inheritance of legitimate and illegitimate children, and that with this aim in mind the legislature used the word "descent" in its "common" meaning, clearly intending the statute to apply to testate as well as intestate succession.

■ The Court fully recognizes that the legislative will is supreme and that when clear and certain must be given the effect intended, where the language of the statute so permits.

The proceedings of the Legislative Assembly of the Virgin Islands relating to the enactment of Bill No. 9, An Act Regarding the Property Status of Illegitimate Children have been submitted in evidence. The following is an excerpt therefrom, taking all such parts as might have a bearing on the question of whether testate as well [as] intestate succession was contemplated by the legislature:

147

"Mr. Downing (proponent of bill) : . . . This bill tends to give the same right of inheritance to children born out of wedlock as that enjoyed by children born to parents who are married. Mr. Chairman, let us look at it in this light: A man goes out, . . . meets a young girl, gives her a lot of sweet talk, and, eventually . . . a human being comes into this world. The man . . . decides that she (the mother) is not good enough for him to make his wife. He agrees that he is going to pay for the support of the child, and he starts to pay, . . . He signs the birth certificate. He admits that that is his child. . . . After a couple of years, . . . he takes unto himself a wife, according to the law. By that marriage, he gets two or three children. . . . The man has a few things in life . . . he owns a little money, a few properties, and so on. After a while, . . . this man passes away, without having had the opportunity to make a will. The matter goes into court for probation, his estate. The three children who were born in wedlock divide his property among themselves, and this child who was born out of wedlock, who he admitted to be his own flesh and blood, gets absolutely nothing."

"On the other hand, if the father does not want to leave anything for his children born out of wedlock, all he has to do is make a will, and he can will such a child or children born out of wedlock out of anything just as he can will any legitimate children (born in wedlock) or any of his relatives who ordinarily would inherit under the law, he can will them out. If there is doubt that any child is his, he can will that child out, disinherit that child, as it were. That is his right.

"Mr. Chairman, you will hear, too, that that law states . . . the father of an illegitimate child can inherit any property of his illegitimate child on the death of such child or children just as the illegitimate child may inherit according to the law of inheritance whatever he might die or leave him; so he may inherit whatever any illegitimate child or children of his may leave."

". . . No one can deny that they are deserving of some protection in the law when it comes to the matter of inheriting whatever any other legitimate child or children may inherit from their parents."

"Mr. Chairman, this law here also makes it necessary before any illegitimate child may inherit upon the death of its father, that the father must have signed the birth certificate in the first place, or he was adjudged by a court of competent juris-

148

diction to be the father of such a child or children. In other words, if a father did not sign the birth certificate, or if a court of competent jurisdiction did not adjudge the father to be the father of the child, then such child will not inherit. That gives the father a protection to know that, after his death, the children who were his flesh and blood, whether born in or out of wedlock, will have an opportunity to inherit share and share alike. And I also think that gives the father ample protection."

The deceased, Henry Bromley Nelthropp, died subsequent to the passage of the 1949 statute concerning illegitimate children. It is clear that, had he died intestate, the petitioners herein would have been able to take or inherit from his estate as his heirs-at-law by virtue of the above-mentioned statute. (Whether their inheritance in such a case would be limited to the real property need not be determined at this point.) That statute established their position in the line of descent, that is, to be included among the "children" considered as heirs-at-law in the "descent" of property. But did the statute also give them a right to be mentioned in a will of an ancestor before they could be considered excluded, which right legitimate children have by statute? Sec. 7, ch. 10, Title II (note prec. 15 V.I.C. § 1).

■ Where a deceased dies leaving a will but no mention is made of one (or more) of his legitimate children (children by marriage), it is presumed that the testator forgot such child and under the code he is allowed to take as if the testator had died intestate. The question here is, then, does the statute of 1949 give an illegitimate child the right to have an ancestor's will set aside, as far as he is concerned, for failure of the testator to mention him by name in his will? Can a statute which reads in terms of "descent" of property be held to apply or extend to provisions of the law dealing with the disposition of property by will? That is the crux of the issues involved in this case.

■ The Court recognizes that this statute is intended to correct some of the harshness of the common law and is,

149

therefore, remedial in nature and as such should be liberally construed, as contended by counsel for petitioners. However, no matter how liberal a construction of a statute one wishes to make, the Court is necessarily limited to construing the language actually used in the statute. That the legislature might have intended to correct the injustices attendant upon the status of illegitimacy may be so; nevertheless, the statute before us is not by its terms a legitimation statute and does not attempt to give to illegitimate children all of the rights and status of legitimate children; it is expressly limited in scope to the "descent of property".

■ Counsel differ as to the meaning which should be given to the term "descent". However, there is no real conflict among the authorities as to the meaning of the term. Counsel for petitioners seems to consider the phrase "hereditary succession", frequently used in describing the term "descent", to be synonymous in the broader term "inheritance". Also, counsel appears to be under the impression that heir-at-law includes and refers to heir under a will, as well as heir designated by law in case of death intestate. But, once it is clearly comprehended that "heir-at-law" means "he who, after his ancestor dies intestate, has a right to all lands, tenements and hereditaments which belonged to him or of which he was seised," 1 Bouvier's Law Dict., Rawle's Third Revision, p. 1433, the various definitions of "descent" are seen to mean the same thing. The classic definition of "descent" is, of course, Blackstone's (2 Bla. Com. 201) : "the title by which one person upon the death of another acquires the real estate of the latter as his heir at law." Perhaps an even simpler definition is that appearing in Bouvier's Law Dictionary and quoted by counsel for defendant as cited above.

■ It is the Court's conclusion that the term "descent" not only technically but generally is used and applied to inheritance only by operation of law rather than by provi-

sion by will, that is, it is applied only to intestate succession. There may be, as counsel contends, some generalized use of the term to distinguish between acquisition of title by inheritance and acquisition by purchase and, also, to include inheritance of both real and personal property. However, it should be noted that the code of laws for the municipality draws a sharp distinction between "Descent of Real Property" (chapter 16, Title II.) and "Distribution of Personal Property" (chapter 17, Title II), which distinction we have to presume our lawmakers were cognizant of. Indeed, the term "descent" is used in the code exclusively with respect to inheritance of real property by intestate succession. See chapters 16, 17, and 18 of Title II (prec. 15 V.I.C. § 1).

In the case of Kent v. Barker [1854, 2 Gray, Mass., 535], cited by counsel for defendant, the Massachusetts court had before it a situation quite similar to the one before us in this case. In that case an illegitimate daughter was not provided for in the will of the mother and Massachusetts had changed the common law by its revised statute chapter 61, § 2, providing that "Every illegitimate child shall be considered as an heir of his mother, and shall inherit her estate, in whole or in part, as the case may be, in like manner as if he had been born in lawful wedlock . . . ." On the basis of that statute the heirs of the illegitimate daughter argued that the said daughter was within the meaning of "children" used in revised statute chap. 62, § 21 providing that "when any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, they shall take the same share of his estate, both real and personal, that they would have been entitled to if he had died intestate . . . ." The court nonsuited the petitioners on the ground that they were the issue of an illegitimate child whereas the statute only gave a right to inherit to the illegitimate child. However, in analyzing the

two statutes above, which are almost identical to the statutes involved in this case, the court observed "As at common law illegitimate children have no rights of inheritance or descent whatever they take is by force of the statutes. The statutes have provided for cases of inheritance, for the descent of intestate estates. They have made no provision for cases where there is an omission by a testator to provide in his will for an illegitimate child. Whether the same reasons apply to the case of an omission of an illegitimate child, and the same results should follow such omission, is a question for the legislature, and not for the court." This court is of the opinion that the reasoning of the Massachusetts court is sound and applicable to the case before us.

Next, let us consider whether anything in the legislative proceedings of the debate on Bill No. 9, Act of May 18, 1949, shows an intention on the part of the Legislative Assembly to give a wider scope or application to the law than the plain meaning of the words indicate. From the proceedings and especially the passages therefrom above quoted, it appears to the Court that Carlos Downing, the proponent of the bill, was concerned chiefly, if not entirely, with the inability of illegitimate children, which existed at common law and in our law to that time, to inherit anything from their father, when he died "without having an opportunity to make a will." It is true that the same speaker later talks of the right of the father to "will out" such children if he did not wish them to inherit but it does not appear that he was making any reference to the situation where a testator omitted to name one of his illegitimate children in his will. For, in this same connection the author of the bill spoke of "willing out other relatives" besides children, and other relatives are "willed out" simply by not naming them. All of this would seem to indicate that section 7

152

of chapter 10 was not within the contemplation of the legislature at the time they were discussing the bill relating to illegitimate children. It is, therefore, the opinion of the Court that the Legislative Assembly did not make clear any intention to amend this code provision so as to have "children" in this section include illegitimate children.

The Court is strengthened in this view by the fact that the same statute of 1949 which provides that "illegitimate child[ren] shall . . . have the same status, . . . of legitimate children . . . for the purpose of the descent of the property", also provides for "descent" of property where the ancestor "was or is adjudged the father of such child". This clause makes provision for adjudication of paternity subsequent to the death of the ancestor, and since it is a canon of statutory construction that the meaning of a statute must be determined from a reading of the statute as a whole, it is, therefore, unreasonable to suppose that the legislature intended that every testator, in order to preclude possible or alleged illegitimate children from inheriting from his estate, would have to mention each by name in his will. (In the case at bar the question of adjudication of paternity was left open to later proof.)

■ Finally, we draw attention to the fact that in the probation of a will every court is charged with seeing to it that the testator's intent is carried out, provided it is not contrary to law. Here, the testator clearly intended that his widow should have his entire estate unmolested by the children of his former marriage. Were the Court to give effect to the statute as prayed for by petitioners, the Court would in effect nullify the will of the testator and place the illegitimate children of testator ahead of his wife, to whom he bequeathed his estate.

■ The Court concludes that the Act of May 18, 1949 applies only to intestate succession, giving to illegitimate

children the same right of inheritance as legitimate children where an ancestor dies intestate and that, therefore, petitioners have no standing to bring this suit.

Order may be drawn in accordance with this opinion.

