**IN THE MATTER**

**OF**

**THE ESTATE OF INGER HEYN, Deceased**

**ELVIRA V. HENDERSON, Appellant**

## No. 12,674

## United States Court of Appeals

### Third Circuit

## Argued January 27, 1959

## Decided March 25, 1959

## Rehearing Denied May 4, 1959

*See, also, 266 F.2d 206*

ALMERIC L. CHRISTIAN, Christiansted, St. Croix, Virgin Islands, *for appellant*

WARREN H. YOUNG, Charlotte Amalie, St. Thomas, Virgin Islands, *for Chester A. Ingvoldstad*

R. H. AMPHLETT LEADER, Frederiksted, St. Croix, Virgin Islands, *for Joseph Alexander, executor*

Before MAGRUDER, WOODBURY and HASTIE, *Circuit Judges*

HASTIE, *Circuit Judge*

As petitioner in this proceeding the appellant, Elvira Henderson, is seeking to establish her right to a distributive share, as in intestacy, of the estate of Inger Heyn who died leaving a will giving her entire estate to her son, Chester Ingvoldstad, who is the respondent here. Mrs. Heyn had a second son, Cornelius Pentheny, who predeceased her. Appellant sues as the illegitimate daughter of Pentheny. It is her position that under the Virgin Islands pretermission statute, as in force at the times in question,[1] she is a "descendant of a child" of Mrs. Heyn who has not been provided for in her ancestor's will and, therefore, is "entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate". To establish that, although an illegitimate child of Pentheny, she is a "descendant" of Pentheny's mother within the meaning and protection of the pretermission statute, petitioner relies upon the provision of section 1 of the Act of May 18, 1949,

[1] Section 7 of chapter 10 of Title II of the (1921) Code of Laws of the Municipality of St. Croix (15 V.I.C. note prec. § 1), as in force at all times relevant to this proceeding reads:

"If any person makes his last will and die, leaving a child or children, or descendants of such child or children, in case of their death, not named or provided for in such will, although born after the making of such will or the death of the testator, every such testator, so far as shall regard such child or children, or their descendants not provided for, shall be deemed to die intestate and such child or children, or their descendants, shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them; and all the other heirs, devisees, and legatees shall refund their proportional part."

A somewhat similar provision, limited to children born after the making of a will, has been substituted for this section in the new Virgin Islands Code. 15 V.I.C. § 18.

Bill No. 9, 14th Legislative Assembly of the Virgin Islands, (15 V.I.C. § 84(13)), that "[a]n illegitimate child shall upon the approval of this measure and thereafter be considered to have the same status, for the purpose of the descent of the property of his or her ancestors, as if he or she were born in lawful wedlock provided that in cases where the ancestor in question is a father . . . he was or is adjudged the father of such child by a Court of competent jurisdiction; . . ."

In the present proceeding the court found on the basis of abundant evidence that Cornelius Pentheny was the father of the petitioner. Indeed, there seems to have been no substantial dispute on the issue of paternity. However, the District Court held, principally upon the authority of its prior decision, In re Nelthropp's Estate, D.C.V.I. 1955, 3 V.I. 141, 129 F. Supp. 609, that the right of inheritance given to an illegitimate child by the Act of May 18, 1949 is concerned exclusively with inheritance where there is no will and does not bring an illegitimate child within the class of "children" or "descendants" entitled to take against a parent's or an ancestor's will under the pretermission statute.

Since principal reliance for this decision was placed upon the Nelthropp case,[2] it should be noted that the Nelthropp opinion follows and relies largely upon the holding of the Supreme Judicial Court of Massachusetts in the early case of Kent v. Barker, 1854, 2 Gray 535, more recently reaffirmed in King v. Thissel, 1915, 222 Mass. 140, 109 N.E. 880. But the Massachusetts rule is itself a minority position for which we have found additional support only in Utah. Mansfield v. Neff, 1913, 43 Utah 258, 134 Pac. 1160. The widely accepted majority rule is that the right

[2] Apparently the attention of the court below was not directed to the fact that the Nelthropp decision had disregarded the court's own earlier adjudication, entered without opinion, granting an illegitimate child the rights denied the Nelthropp children. Estate of Noel, Probate No. 6–1950, Division of St. Croix, decided June 17, 1954.

the ordinary pretermission statute gives to a "child" who has been omitted from the will of its parent includes an illegitimate child who, under some other statute, has been given the same right to inherit from the parent in question as is enjoyed by a legitimate child. Re Wardell, 1881, 57 Cal. 484; Milburn v. Milburn, 1882, 60 Iowa 411, 14 N.W. 204; Martin v. Claxton, 1925, 308 Mo. 314, 274 S.W. 77; Bunce v. Bunce, 1891, 20 N.Y. Civ. Proc. Rep. 332, 14 N.Y. Supp. 659; Re Estate of Gossett, 1942, 46 N.M. 344, 129 P.2d 56; 142 A.L.R. 1441; Cf. Ramsey v. Saunders, 1934, 114 W. Va. 590, 172 S.E. 798. We think this majority view is sound. The pretermission statute seems to reflect a policy of preserving normal inheritance in the line of direct descent unless a testator shall affirmatively indicate in his will a purpose to disinherit any child or grandchild who would take from him in intestacy. Standing alone such a statute did not benefit an illegitimate child because at common law only a legitimate child stood in the line of descent and could inherit from its parent. But when another statute broadened the policy of inheritance to include certain illegitimate children, these children became members of the normally inheriting class which pretermission legislation protects. In this sense the two statutes are *in pari materia*, as Milburn v. Milburn, supra, and Re Estate of Gossett, supra, both point out, so that the pretermission statute should be construed in the light of the statute conferring rights of inheritance upon illegitimate children.

Moreover, the court below noted that the case for the petitioner is reinforced by the particular wording of the Virgin Islands pretermission statute that the testator "shall be deemed to die intestate" with reference to the child who has been omitted from his will, and that such a child shall inherit "as if he had died intestate". We find no satisfactory rationalization for denying this benefit to

any child who would have inherited had the ancestor actually died intestate. We are satisfied that the Nelthropp case was incorrectly decided and should not be followed.

Once it is concluded that the pretermission statute protects an illegitimate child omitted from its father's will, it seems to follow that an illegitimate child can also take its deceased father's share when omitted from a paternal grandparent's will. For on its face the pretermission statute places a descendant of a child in its parent's position. There would be no logic in treating illegitimacy as affecting the status of one but not the other.

In this connection it is relevant that when the Act of May 18, 1949, became law an illegitimate child was already entitled to inherit both from and through its mother. A much earlier enactment had provided that "[a]n illegitimate child shall be considered an heir of its mother, and shall inherit or receive her property, real or personal, in whole or in part, as the case may be, in like manner as if such child had been born in lawful wedlock; and such child shall be entitled to inherit or receive, as representing his mother and (sic) property real or personal, of the kindred, either lineal or collateral, of such mother: . . ." Code of Laws (1921) of the Municipality of St. Croix, Title II, chapter 18, § 1 (15 V.I.C. note prec. § 1). With this earlier statute on the books the proponent of the Act of May 18, 1949, prefaced his explanation of his bill to the legislature with a reminder that an illegitimate child is equally the offspring of both parents. He then stated that "the bill tends to give the same right of inheritance to children born out of wedlock as that enjoyed by children born to parents who are married". Proceedings of the 14th Legislative Assembly, Legislative Day April 8, 1949. In other words, this bill was viewed as giving to an illegitimate child who already would inherit through its mother by representation, as well as from her directly, correlative

legal capacity on the paternal side. In these circumstances, the provision of this new law according an illegitimate child "the same status, for the purpose of the descent of the property of his or her ancestors, as if he or she were born in lawful wedlock" is reasonably to be read as employing the plural noun "ancestors" advisedly as a term appropriate to include paternal grandparents as well as the father himself.

Several other arguments thought to justify affirmance of the decision below have been advanced and briefed by counsel for the appellee and for the executor of the Estate of Inger Heyn. We have considered all of these but find none of them persuasive.

The judgment will be reversed.